## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| MICHELLE MACDONALD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Civil Action No. 1:22-cv-00024-NT** |
| ) | |
| BREWER SCHOOL DEPARTMENT, et ) | |
| al., ) | |
| ) | |
| Defendants. ) | |

## DEFENDANT BREWER SCHOOL DEPARTMENT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM WITH INCORPORATED MEMORANDUM OF LAW

### MOTION

Defendant Brewer School Department ("School Department") moves this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing all claims brought against it in Plaintiff Michelle MacDonald's Complaint (ECF No. 1). As set forth in the incorporated memorandum of law, the Complaint fails to state a claim against the School Department upon which relief may be granted and, accordingly, the claims against the School Department must be dismissed.

### INTRODUCTION

In her Complaint in this case, Plaintiff Michelle MacDonald alleges that two of her co-workers have perpetrated some relatively minor slights against her over a period of three years. The conduct she complains of ranges from giving her dirty looks, to calling her a "drama queen," to leaving her off emails or failing to respond to emails in a timely manner. She also complains that school administration failed to adequately address the perceived unkindness of her colleagues. Plaintiff, as she admits, has remained employed by the School Department for the entire period at issue, her classroom has, at her request, been moved away from the allegedly offending co-workers

(albeit to a classroom not the size of her liking) and the School Department has repeatedly honored her requests for training and other supports for LGBTQ+ students in the district. Yet Plaintiff has filed a 35 page, 205 paragraph complaint against the School Department, its current and former Superintendents, its Director of Instruction, and two teachers with whom Plaintiff was in conflict with, alleging a panoply of discrimination and civil rights claims. The law is clear that standard for liability for employment discrimination is "sufficiently demanding to ensure that Title VII does not become a general civility code" and therefore "offhand comments, and isolated incidents are not sufficient to create actionable harassment." *O'Rourke v. City of Providence*, 235 F.3d 713, 729 (1st Cir. 2001) (internal quotation marks omitted) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Plaintiff's allegations in this case amount to no more than the type of offhand comments and isolated incidents the *O'Rourke* court held are not actionable and Plaintiff's complaint should therefore be dismissed.

## STATEMENT OF FACTS

The Complaint in this case includes over 150 factual allegations, many of which pertain to Plaintiff's perception that there are students and staff in Brewer who are either insensitive or downright antagonistic to the needs of LGBTQ students and are entirely irrelevant to Plaintiff's claims against the Defendants. The pertinent facts alleged in the Complaint, which must be taken as true for the purpose of this motion are as follows.

Plaintiff has a minor transgender child who attends a different school system. Compl. ¶ 43. She has been employed as an English teacher at Brewer High School since 2007. Compl. ¶ 41. She has received consistently strong performance evaluations, served for seven years as the Curriculum Leader (equivalent to a department chair) prior to the 2019-2020 school year, serves as the co-advisor of the School's Gender and Sexuality Alliance ("GSA"), and is well known for her advocacy on behalf of LGBTQ+ students. Compl. ¶¶ 42, 44. Over the years, Plaintiff has met with

the School Department to request staff trainings, presentations for students, and for other steps to help create and maintain a safe and supportive environment for LGBTQ+ students. Compl. ¶¶ 45, 48-49, 62, 67-68, 74, 93. She has also participated in meetings between students and Department officials to discuss student concerns and recommendations related to LGBTQ+ issues. Compl. ¶¶ 71-72, 92.

At all relevant times, Paul Wellman and Breanne Pelletier were English teachers at Brewer High School. Compl. ¶¶ 23, 25. From October 2015 to July 2019, Cheri Towle was the Superintendent of the School Department and Gregg Palmer has been the Superintendent since August 2019. Compl. ¶¶ 14-17. Throughout the events giving rise to Plaintiff's complaint, Brent Slowikowski was the Principal of Brewer High School, and Renita Ward-Downer was the Director of Instruction for the School Department, Compl. ¶¶ 19, 21.

Plaintiff alleges that she got along well with Ms. Pelletier and Mr. Wellman until 2017. Compl. ¶ 47. In March 2017, at students' request, Plaintiff contacted Ms. Pelletier, who served as the yearbook advisor, to request the GSA be included in the yearbook, but Ms. Pelletier refused her request. Compl. ¶¶ 53-55. Plaintiff reported the issue to the School Department and Ms. Pelletier was told that GSA must be included in the yearbook. Compl. ¶ 56.

Plaintiff alleges that after she made the report, Ms. Pelletier started giving Plaintiff dirty looks, called her "drama queen," stopped responding to her emails, spoke negatively about her to students, and was rude to her in meetings. Compl. ¶ 57. In June, 2017, Plaintiff requested that the GSA advisor position be a paid stipend position, Compl. ¶ 58, and then in September, 2017, Plaintiff reported to Mr. Slowikowski that Mr. Wellman expressed to Plaintiff that the GSA advisor position should not be paid because it was "like a religion" and Plaintiff was "influencing students with [her] beliefs." Compl. ¶ 59. In response to this report, in October 2017, Mr. Slowikowski moderated a discussion between Plaintiff and Mr. Wellman that had become heated.

3

Plaintiff emphasized the need to create a safe learning environment for LGBTQ+ students and told Mr. Slowikowski that comments made by Mr. Wellman had made her feel uncomfortable because of her transgender child. Compl. ¶¶ 63-69.

In January 2018, Plaintiff informed Mr. Slowikowski that Ms. Pelletier was refusing to respond to her work-related emails, something Plaintiff attributes, without any factual support, to her opposition to the exclusion of GSA from the yearbook. Compl. ¶ 73. In response to these concerns, Mr. Slowikowski convened a meeting with the assistant principal and Ms. Pelletier. Compl. ¶ 78. The group discussed how to safely include GSA students' photos in the yearbook. Compl. ¶¶ 79-82. There is no allegation in the Complaint that Ms. Pelletier or anyone else raised any further objection to GSA being included in the yearbook. Rather, Plaintiff alleges only that Ms. Pelletier stated repeatedly that she did not like Plaintiff and there was nothing Plaintiff could do to change her mind. Plaintiff alleges that neither Mr. Slowikowski nor the assistant principal did anything to stop Ms. Pelletier's statements. Compl. ¶¶ 85-86.

In April 2018, Plaintiff filed an affirmative action complaint with the School Department, alleging that she was being subjected to a hostile work environment. Compl. ¶ 89. Also in the spring of 2018, she was appointed as Curriculum Leader. Compl. ¶¶ 114, 115.

In June 2019, an official complaint about Plaintiff, signed by thirteen School Department employees was filed with Mr. Slowikowski. Compl. ¶ 105. The complaint alleged that Plaintiff had created "hostile conditions" and that the "environment" was a direct result of Plaintiff being "aggressive and hostile when in conversations with people she does not agree with," being "hostile towards staff who practice faith/religion," and "[b]ullying Brewer High School staff for the purpose to coerce into desire [sic] outcomes and behavior." Compl. ¶ 107. Plaintiff claims that allegations of her co-workers were false and alleges that Ms. Pelletier and Mr. Wellman who were "motivated in part" by Plaintiffs advocacy for LGBTQ+ rights instigated the complaint. Compl ¶

4

104. An investigation of the complaint found that Plaintiff had not violated any Department rules or policies and that she had not *intentionally* engaged in confrontational behavior. Compl. ¶ 129. The interim Superintendent wrote Plaintiff, however, that her colleagues perceived her as overly confrontational at times and stated that her behavior had been unprofessional. Compl. ¶ 130.

In late June, 2019, while investigation of the complaint against Plaintiff was ongoing, for the first time in seven years, Ms. Pelletier, rather than Plaintiff, was selected to serve as Curriculum Leader for the following year. Mr. Slowikowski informed Plaintiff that Ms. Pelletier had been selected as Curriculum Leader because "they believed [she] would be better able to communicate with colleagues about student needs." Compl. ¶¶ 120, 122. After filing a union grievance, Plaintiff was given the position of Co-Curriculum Leader and Plaintiff and Ms. Pelletier served as co-Curriculum Leaders for the 2019-20 school year. Compl. ¶ 124.

Plaintiff alleges that she had ongoing issues with Ms. Pelletier in late 2019 and early 2020 involving department meeting proposals and budgetary matters. Compl. ¶¶ 137, 140, 142, 145. In March 2020, Plaintiff met with Superintendent Palmer and Mr. Slowikowski and explained that the issues with Ms. Pelletier were making her job as Curriculum Leader difficult and her work environment unsafe. Compl. ¶ 146. In June 2020, Plaintiff applied for the Curriculum Leader position for the following year. Compl. ¶ 147. Ms. Pelletier was appointed to the position and Plaintiff did not reapply for the Curriculum Leader position in 2021. Compl. ¶¶ 149, 151.

In July 2019, Plaintiff requested a room change to the other side of the building where she would not have to interact with Mr. Wellman and Ms. Pelletier on a daily basis. Compl. ¶ 125. Initially, Mr. Slowikowski denied her request and offered her a room two doors down from her then-current room, but the decision was ultimately overruled by the interim Superintendent after discussions with Plaintiff's union. Compl. ¶¶ 126-27. Mr. Slowikowksi then assigned Plaintiff to a small, Special Education room, even though, Plaintiff alleges, larger classrooms were available

and Plaintiff often had larger class sizes. Compl. ¶ 128. On two separate occasions after Plaintiff had her classroom moved away from Mr. Wellman and Ms. Pelletier, Ms. Pelletier requested to have all the English department classrooms near each other. Compl. ¶¶ 141, 152.

In August 2019, Plaintiff filed an internal complaint of a discriminatory and hostile work environment and retaliation. Compl. ¶ 132. Then in October 2019, Plaintiff filed a complaint with the MHRC and EEOC against the Department, Mr. Wellman, and Ms. Pelletier. The complaints against Mr. Wellman and Ms. Pelletier were dismissed.[1] Compl. ¶¶ 35-36, 135. In December 2019, Plaintiff also had email communication issues with Mr. Slowikowski and Ms. Ward-Downer, in which Mr. Slowikowski left Plaintiff off an email to all department chairs and Ms. Ward-Downer is accused of providing "very vague" responses to Plaintiff's questions in one email and failing to respond to another email "in a timely manner."

## ARGUMENT

**I.   Standard of Review.**

"To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must set forth facts sufficient to state a legal claim on which relief could be granted." *Giragosian v. Bettencourt*, 614 F.3d 25, 28-29 (1st Cir. 2010). In evaluating the sufficiency of the complaint, the Court "need not credit a plaintiff's '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Thus, the court conducts a two-step analysis when evaluating a Rule 12(b)(6) motion to dismiss. *See Guadalupe-Báez v. Pesquera*, 819 F.3d 509, 514 (1st Cir. 2016). First, the court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Id.*

---

[1] Plaintiff filed a second complaint in June 2021 that was dismissed under 5 M.R.S. 4612(2) (for no unlawful discrimination). Compl. ¶¶ 33-34, 38.

(quotation marks omitted) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). Second, "the court must determine whether the well-pleaded facts, taken in their entirety, permit 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Morales-Cruz*, 676 F.3d at 224). "This plausibility standard is 'not akin to a "probability requirement"' but it 'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 70 (1st Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).

Plaintiff's Complaint includes fifteen counts, two of which are brought against the School Department and the remaining thirteen are brought against the Individual Defendants in their personal and official capacities. Plaintiff's MHRA and Title VII claims against the School Department and official capacity Section 1983 claims fail to meet the standard necessary to survive dismissal.[2]

## II. Allegations of Conduct Occurring Before January 3, 2019 Must Be Disregarded.

Under both the MHRA and Title VII, a timely administrative charge must be filed within 300 days after the alleged unlawful employment practice occurred. *See* 5 M.R.S. § 4611; 42 U.S.C. § 2000(e)(1); *Ramsdell v. Huhtamaki, Inc.*, 992 F. Supp. 2d 1, 15-16 (D. Me. 2014) (discussing retaliation claim); *Ayala v. Shinseki*, 780 F.3d 52, 56 (1st Cir. 2015) (discussing Title VII claims based on discrete discriminatory acts). Plaintiff filed her first administrative charge with the Maine Human Rights Commission on October 29, 2019. Compl. ¶ 29. Thus, the 300-day "look back period" under Title VII and the MHRA establishes a cut-off date of January 3, 2019. *See Ramsdell*, 992 F. Supp. 2d at 16. For Plaintiff to rely on earlier events to support her discrimination claims, the Complaint must plausibly allege that those events were "part of an ongoing series of

---

[2] Plaintiff's personal capacity claims against Gregg Palmer, Cheri Towle, Brent Slowikowksi, Renita Ward-Downer, Paul Wellman, and Breanne Pelletier (collectively the "Individual Defendants") are addressed in the Individual Defendants' separate motion to dismiss.

discriminatory acts" and that there was "some violation within the statute of limitations period that anchors the earlier claims." *Id.* at 18 (quoting *Lockridge v. Univ. of Me. Sys.*, 597 F.3d 464, 474 (1st Cir. 2010)).  There are no such allegations in the Complaint.  Accordingly, allegations regarding the inclusion of the GSA in the yearbook, Ms. Pelletier's alleged failure to respond to work-related emails in 2018 and Plaintiff's April 2018 internal complaint must all be disregarded.

### III. Plaintiff's Claims for Discrimination Should Be Dismissed Because She Has Failed to Adequately Plead a Claim for Associational Discrimination.

Plaintiff claims in both Count I that she was subjected to discrimination on account of her sex, sexual orientation, or gender identity in violation of the MHRA, and in Count II on account of her sex in violation of Title VII.[3] Compl. ¶¶ 169, 173.  In order to maintain these claims, Plaintiff must allege that she is a member of a protected class.  Nowhere in the Complaint, however, does Plaintiff allege that the discrimination was because of *her* sex, sexual orientation or gender identity.  Thus, although not expressly stated, it is clear that she grounds her claim on a theory of associational discrimination.  In other words, she claims she was subjected to a hostile work environment because of her association with students who identify as LGBTQ+.

Associational discrimination claims are specifically permitted under the MHRA which includes in the definition of an "aggrieved person" any person who claims to have been subject to "discrimination based on the person's known relationship or association with a member of a protected class." 5 M.R.S. § 4553(1-D).  There is, however, no similar language in Title VII. Although some circuits have held that an employer may violate Title VII by taking action against an employee who is not themselves a member of a protected class because of the employee's association with a person belonging to the protected class, *e.g.*, *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008); *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, & GMC Trucks, Inc.*,

---

[3] Plaintiff also claims, in the same counts, that she was retaliated against.  Those claims are discussed in Section V below.

8

173 F.3d 988, 994 (6th Cir. 1999), the First Circuit has not so held. *Frith v. Whole Foods Mkt., Inc.*, 517 F. Supp. 3d 60, 71 (D. Mass. 2021), *appeal docketed*, No. 21-1171 (1st Cir. Mar. 4, 2021) (observing that there is "no controlling First Circuit cases regarding associational discrimination under Title VII").

In any event, Plaintiff has failed to plausibly plead a claim for associational discrimination. A plaintiff asserting an associational discrimination claim "still must allege that they were discriminated against on the basis of" their own protected characteristic, "rather than on the basis of . . . messaging" related to the protected characteristic. *Frith*, 517 F. Supp. 3d at 72. In other words, a plaintiff must show that they suffered discrimination based on the relationship between their protected characteristic and that of the person(s) with whom they associate. *Gallo v. W.B. Mason Co.*, No. CIV.A. 10-10618-RWZ, 2010 WL 4721064, at *1 (D. Mass. Nov. 15, 2010) (stating that race-based associational discrimination "falls within Title VII's prohibition of racial discrimination because the difference in race between the Title VII plaintiff and the third persons is the motivation for the discrimination"); *Hittle v. City of Stockton*, No. 212CV00766TLNKJN, 2016 WL 1267703, at *4 (E.D. Cal. Mar. 31, 2016);"[A] claim for associational discrimination is available only to a plaintiff who is not a member of the same protected class as the individual(s) with whom he allegedly associates."; *Whitfield v. Trade Show Servs., Ltd.*, No. 2:10-CV-00905-LRH, 2012 WL 693569, at *4 (D. Nev. Mar. 1, 2012).

Here, Plaintiff fails to identify her own sex, her sexual orientation, or her gender identity in the Complaint (though she does use she/her pronouns when referring to herself). Plaintiff's failure to allege that she "is not a member of the same protected class as the individual(s) with whom [s]he allegedly associates" is fatal to her associational discrimination claim. *See Hittle*, 2016 WL 1267703, at *4.

Furthermore, Plaintiff fails to allege that she was subjected to discrimination because of her association with a member of a protected class. Although Plaintiff pleads that she has a transgender child, she never once alleges any connection between her association with her child and the alleged discriminatory conduct. Rather, Plaintiff's claims are based on her allegations that she was discriminated against based on her advocacy for LGBTQ+ issues. But advocacy is not association and it is only discrimination on the basis of *association* that gives rise to a claim. *See Zarda v. Altitude Express, Inc.*, 883 F.3d 100, 125 (2d Cir. 2018), *aff'd sub nom. Bostock v. Clayton Cty., Ga.*, 140 S. Ct. 1731 (2020) ("[I]f a male employee married to a man is terminated because his employer disapproves of same-sex marriage, the employee has suffered associational discrimination based on his own sex because the fact that the employee is a man instead of a woman motivated the employer's discrimination against him." (internal quotation marks omitted)); *Hively v. Ivy Tech Cmty. Coll. of Ind.*, 853 F.3d 339, 349 (7th Cir. 2017) ("No matter which category is involved, the essence of the claim is that the plaintiff would not be suffering the adverse action had his or her sex, race, color, national origin, or religion been different.") *Gallo v. W.B. Mason Co., Inc.,* 2010 WL 4721064 D. Mass. Nov. 15, 2010 ("dismissing associational discrimination claim because the complaint alleged plaintiff "was fired because he protested discrimination against female employees, not because he was a male associating with females."). In short, the alleged discrimination because of her "messaging" related to the protected characteristic of others is not a sufficient basis for an associational discrimination claim and Plaintiff had therefore failed to plausibly plead that she is a member of a protected class.

### IV.   Plaintiff Has Failed to Plausibly Plead a Claim for Hostile Environment Harassment.

Counts I and II of the Complaint both include claims for hostile work environment harassment. To plead a plausible hostile work environment claim under the MHRA and Title VII, Plaintiff must allege:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

*O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir. 2001) (discussing Title VII); *accord Johnson v. York Hosp.*, 2019 ME 176, ¶ 17, 222 A.3d 624 (discussing MHRA). As discussed above, because Plaintiff has failed to adequately allege associational discrimination, she has failed to meet the first element of this test. Moreover, even assuming that Plaintiff's allegations of advocacy for LGBTQ+ issues is sufficient to constitute membership in a protected class, Plaintiff has failed to plausibly plead the other elements necessary to maintain a hostile work environment claim.

      a. **The Alleged Conduct Was Not Severe or Pervasive.**

Plaintiff has failed to plead facts that could establish the requisite severity or pervasiveness. In assessing whether a work environment is "hostile" or "abusive," courts "look[] at all the circumstances." *Harris*, 510 U.S. at 17; *see also Johnson*, 2019 ME 176, ¶ 18, 222 A.3d 624. Those circumstances include the "frequency" of the allegedly discriminatory conduct; "its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." *Perez v. Horizon Lines, Inc.*, 804 F.3d 1, 6 (1st Cir. 2015) (quoting *Pomales v. Celulares Telefonica, Inc.*, 447 F.3d 79, 83 (1st Cir. 2006)). "The thrust of this inquiry is to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of the workplace and actual harassment." *Noviello v. City of Bos.*, 398 F.3d 76, 92 (1st Cir. 2005). "[O]ffhand comments[] and isolated incidents are not sufficient to create actionable harassment; the hostile work environment standard must be kept sufficiently demanding to ensure that Title VII does not become a general civility code."

11

*O'Rourke*, 235 F.3d at 729 (internal quotation marks omitted) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)); *see also Flood v. Bank of Am. Corp.*, 780 F.3d 1, 12 (1st Cir. 2015) ("The workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins." (alteration omitted)).

Here, Plaintiff's hostile work environment claims seem to be based primarily on her interactions with Ms. Pelletier and Mr. Wellman. Specifically, Plaintiff alleges that Ms. Pelletier refused to respond to Plaintiff's emails, left Plaintiff off emails involving their shared responsibilities, gave Plaintiff dirty looks and called her "drama queen," and told Plaintiff she did not like her. Compl. ¶¶ 57, 73, 85, 137, 142. Plaintiff also alleges that Plaintiff found Mr. Wellman's views and comments offensive, and that students had reported feeling similarly. Compl. ¶¶ 61, 65, 67, 69, 76. The only comment directed at or about Plaintiff, however, was Mr. Wellman's statement in September of 2017 that she was pushing her views on students, Compl. ¶¶ 59-61, a comment that expressed his opinion but is by no means harassing.

These actions and comments by Ms. Pelletier and Mr. Wellman, and the March 2018 yearbook meeting with Mr. Slowikowski took place well before January 3, 2019. Thus, Plaintiff may not rely on these events to plausibly plead a hostile work environment claim because she has not alleged that they were "part of an ongoing series of discriminatory acts" and that there is an anchoring violation within the limitations period. *Ramsdell*, 992 F. Supp. 2d at 18.

Even if the pre-2019 comments and actions could be considered, those facts, together with facts occurring after January 2019 are insufficient to support a plausible hostile work environment claim. "Offhand comments and a tense or uncomfortable working relationship with one's supervisor are, without more, insufficient to support a hostile work environment claim," *Flood*, 780 F.3d at 12. The March 2018 yearbook meeting and other alleged conversations with Plaintiff simply do not rise to the level of actionable harassment. *See O'Rourke*, 235 F.3d at 729 (cautioning

12

that Title VII is not "a general civility code"). Likewise, while Plaintiff did not get along with Ms. Pelletier and Mr. Wellman, the absence of effective communication with colleagues, even when it escalated to rudeness and name calling, does not amount to a hostile work environment. *See Noviello*, 398 F.3d at 92 ("[R]udeness or ostracism, standing alone, usually is not enough to support a hostile work environment claim."). Moreover, Plaintiff never alleges that the claimed harassment "unreasonably interfered with [her] work performance." *See Perez*, 804 F.3d at 6. Nor has Plaintiff alleged "conduct that was "physically threatening or humiliating." *See id.* Finally, although the incidents Plaintiff describes may fairly be described as "episodic," they are "not so frequent as to become pervasive." *See Lee-Crespo v. Schering-Plough Del Caribe Inc.*, 354 F.3d 34, 46 (1st Cir. 2003).

In sum, Plaintiff's allegations, taken together, simply do not plausibly show that Plaintiff was subjected to a hostile work environment.[4]  *See Kosereis v. Rhode Island*, 331 F.3d 207, 216-17 (1st Cir. 2003) (holding that teacher had not established hostile work environment based on name calling by students and teasing by fellow teachers where comments were not frequent, severe, or physically threatening and did not interfere with plaintiff's work performance). That claim should therefore be dismissed.

### b. Plaintiff has failed to plead any facts that plausibly provide a basis for employer liability.

Although the bulk of her allegations of wrongdoing are asserted against her two colleagues, Plaintiff attempts to impose liability on the School Department in two ways. First, she appears to assert that the School Department should have done more to protect her from unkind treatment by her colleagues. "When coworkers, rather than supervisors, are responsible for the creation and perpetuation of a hostile work environment . . . an employer can only be liable if the harassment

---

[4] Plaintiff's allegation that the alleged conduct "affected the terms, conditions, or privileges of [her] employment and created an intimidating, hostile, and offensive working environment," Compl. ¶ 160, is merely a recitation of this element of the cause of action that need not be credited, *Alston*, 988 F.3d at 571.

is causally connected to some negligence on the employer's part." *Wilson v. Moulison N. Corp.*, 639 F.3d 1, 7 (1st Cir. 2011) (quoting *Noviello v. City of Bos.*, 398 F.3d 76, 95 (1st Cir. 2005)). "Typically, this involves a showing that the employer knew or should have known about the harassment, yet failed to take prompt action to stop it." *Noviello*, 398 F.3d at 95. Because neither Ms. Pelletier nor Mr. Wellman were ever Plaintiff's supervisor, she must plausibly allege negligence on the part of the School Department in order to state a hostile environment claim against it. As set forth more fully above, the conduct of which Plaintiff complains does not rise to the level of harassment sufficient to support a hostile work environment claim. Even if it did, however, Plaintiff does not plausibly allege that the School Department failed to take prompt and appropriate remedial action. Plaintiff's allegation that "[t]he Brewer School Department, Gregg Palmer, Cheri Towle, Brent Slowikowski, and Renita Ward-Downer knew or should have known of the [allegedly harassing] conduct and failed to take immediate and appropriate corrective action," Compl. ¶ 162, merely parrots this element of the cause of action and, therefore, need not be credited, *Alston*, 988 F.3d at 571. The *facts* Plaintiff pleads regarding the School Department's response to her complaints, including the various meetings, trainings and relocation of her room, establish that action was taken to address Plaintiff's concerns.

Second, Plaintiff seeks to impose liability on the School Department through her allegations that it took direct adverse action against her. This attempt must fail as well. In her Complaint, Plaintiff appears to suggest two possible instances of adverse action: (1) the move to a smaller classroom; and (2) the failure to appoint her as Curriculum Leader for the 2019-2020 school year.[5] Neither of these alleged adverse actions can give rise to liability.

---

[5] Plaintiff concedes that she served as Curriculum leader in the 2018-2019 year and that she did not apply for the 2020-2021year, Compl. ¶¶ 124, 149, 151, so only the 2019-2020 year should be considered but the analysis does not change if other years are also considered.

There can be no serious contention that the School Department is liable to Plaintiff for moving her – at her request – to a room she feels is smaller than others that may be available. Employment discrimination under Title VII and the MHRA "is effected through an adverse employment action: 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Does 1-6 v. Mills*, No. 1:21-CV-00242-JDL, 2021 WL 4783626, at *15 (D. Me. Oct. 13, 2021), *aff'd*, 16 F.4th 20 (1st Cir. 2021) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); *see also Russell v. ExpressJet Airlines, Inc.*, 2011 ME 123, ¶ 11, 32 A.3d 1030. "To be adverse, an action must materially change the conditions of [a plaintiff's] employ." *Gu v. Bos. Police Dep't*, 312 F.3d 6, 14 (1st Cir. 2002). Thus, the action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Morales-Vallellanes v. Potter*, 605 F.3d 27, 35 (1st Cir. 2010) (quoting *Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 23 (1st Cir. 2002)). "Work places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." *Id.* (quoting *Marrero*, 304 F.3d at 23).

Nor has Plaintiff adequately pled a claim based on her failure to be appointed Curriculum Leader. In fact, the Complaint is completely devoid of any facts that support a claim that the decision not to appoint her as Curriculum Leader was based on her sex, sexual orientation, or gender identity.[6] As explained more fully above, Title VII requires Plaintiff to show that the alleged discrimination was based on her association with a protected class – messaging regarding a protected class is not enough. *See Frith*, 517 F. Supp. at 72. Plaintiff has failed to plead any facts

---

[6] Plaintiff's conclusory statement that the decision was based on her advocacy around LGBTQ+ issues is insufficient. *See* Compl. ¶¶ 121, 150.

that show that her association with students who identify as LGBTQ+ was the reason she was not selected as Curriculum Leader. Indeed, Plaintiff specifically pleads that she was appointed to the position <u>after</u> she advocated for GSA to be in the yearbook.

### V.     Plaintiff Has Failed to Adequately Allege A Retaliation Claim.

In addition to alleging claims for discrimination under the MHRA and Title VII, Counts I and II of the Complaint also include claims for retaliation. The elements of a claim for unlawful retaliation under the MHRA and Title VII are: (1) the plaintiff "engaged in an activity protected by the applicable statute," (2) "she suffered an adverse employment action," and (3) "the adverse employment action was causally connected to the protected activity." *Osher v. Univ. of Me. Sys.*, 703 F. Supp. 2d 51, 65 (D. Me. 2010). The standard for determining what constitutes an adverse action is an objective one and requires more than "petty slights or minor annoyances." *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "An adverse employment action typically involves discrete changes in the terms of employment, such as reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Henderson v. Mass. Bay Transportation Auth.*, 977 F.3d 20, 40 (1st Cir. 2020) (cleaned up) (quoting *Garmon v. Nat'l R.R. Passenger Corp.*, 844 F.3d 307, 314 (1st Cir. 2016)). "An employee's subjective reaction to the claimed act of retaliation is not determinative." *Lima v. City of E. Providence*, 17 F.4th 202, 209 (1st Cir. 2021).

Here, Plaintiff appears to claim protected status based on her April 2018 affirmative action complaint (which is outside the applicable time period), her August 2019 internal complaint of a discriminatory and hostile work environment and retaliation, and her October 2019 claim filed with the Maine Human Rights Commission. Putting aside Plaintiff's wholly conclusory allegation that the decision not to appoint her as Curriculum Leader was in retaliation for her LGBTQ+ advocacy and protected reporting, Compl. ¶ 150, nowhere does Plaintiff plausibly plead that Ms.

16

Towle, Mr. Palmer, Mr. Slowikowske or Ms. Ward-Downer, the four individuals she believes may have been involved in the decision, Compl. ¶ 121, 150, acted with discriminatory animus. Plaintiff's retaliation claims must therefore be dismissed.

### VI.   Section 1983 Claims (Counts IV-XV) Should Be Dismissed.

In Counts IV through XV, Plaintiff asserts claims for violation of her rights under the First Amendment and the Equal Protection Clause of the U.S. Constitution pursuant to 42 U.S.C. § 1983. Compl. ¶¶ 5, 178-201. "Section 1983 'affords a private right of action in favor of persons whose federally assured rights are abridged by state actors.'" *Parker v. Landry*, 935 F.3d 9, 14 (1st Cir. 2019) (quoting *Kando v. R.I. State Bd. of Elections*, 880 F.3d 53, 58 (1st Cir. 2018)). Plaintiff's constitutional claims are brought against the Individual Defendants in their personal and official capacities. Compl. ¶ 26. The personal capacity claims against the Individual Defendants must be dismissed for the reasons set forth in their separate motion to dismiss.

Official capacity suits "generally represent only another way of pleading an action against an entity of which an [employee] is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Governmental entities "are responsible only for their own unconstitutional acts" and "are not vicariously liable under section 1983 for the actions of their non-policymaking employees." *Haley v. City of Bos.*, 657 F.3d 39, 51 (1st Cir. 2011); *see also Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 691 (1978); *Connick v. Thompson*, 563 U.S. 51, 60 (2011).  Accordingly, to prevail on her official-capacity constitutional claims, Plaintiff "bears the burden of showing that, 'through its *deliberate* conduct, the [School Department] was the "moving force" behind the injury alleged.'" *Haley*, 657 F.3d at 51 (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 397 (1997)).  This requires Plaintiff to identify a School Department policy or custom that caused her alleged constitutional injury. *Id.*

17

Plaintiff has not plausibly pled a violation of her constitutional rights. Even if she had, the Complaint does not point to any School Department policy or custom that was the moving force behind the alleged deprivation of Plaintiff's constitutional rights. *See Silva v. Worden*, 130 F.3d 26, 30-31 (1st Cir. 1997). Accordingly, Counts IV-XV must be dismissed as against the School Department and Individual Defendants in their representative capacity.

### a. First Amendment

To establish liability for First Amendment retaliation, a plaintiff must show: (1) that she "engaged in constitutionally protected conduct," (2) that she "was subjected to an adverse action by the defendant," and (3) "that the protected conduct was a substantial or motivating factor in the adverse action." *Pollack v. Reg'l Sch. Unit 75*, 12 F. Supp. 3d 173, 188 (D. Me. 2014) (quotation marks omitted) (quoting *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012)). "Under the First Amendment, an adverse action is an action that would deter a reasonably hardy person from exercising his or her constitutional rights." *D.B.*, 675 F.3d at 43 n.11; *see also Barton v. Clancy*, 632 F.3d 9, 29 (1st Cir. 2011) (explaining that, in Section 1983 context, "adverse employment action" is one that "would have a chilling effect on the employee's exercise of First Amendment rights").

Plaintiff alleges that her "LGBTQ+ advocacy, protected oppositional conduct and reporting, WPA-protected activity, MHRC and EEOC complaint" all "raised matters of public concern." Compl. ¶ 159. Once again, this allegation merely parrots an element of the cause of action and is insufficient on its own to establish that Plaintiff engaged in protected conduct. *See Ocasio-Hernández*, 640 F.3d at 12. An employee's speech is protected under the First Amendment when "the employee spoke as a citizen and . . . the speech was on a matter of public concern." *Curran v. Cousins*, 509 F.3d 36, 45 (1st Cir. 2007). When a public employee speaks in the course of her job duties, the employee is not speaking "as a citizen" and her speech does not fall within

18

the protection of the First Amendment. *Id.* at 45-46; *see also Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Plaintiff has failed to plausibly allege that she engaged in speech "as a citizen," rather than in the course of her duties as a teacher and advisor of the GSA. *See Curran*, 509 F.3d at 45-46 (holding that plaintiff's threatening comments "made in the course of his duties . . . to his superiors, and during a discussion of official Department policy" were not made "as a citizen" and thus were not protected under First Amendment).

With respect to the adverse employment action element, Plaintiff appears to rely, again, on the failure to select her as Curriculum Leader. Compl. ¶¶ 121, 150. The Complaint does not include any facts whatsoever related to a School Department policy or custom with *any* connection to those decisions, let alone a causal connection. Although Plaintiff alleges that Mr. Slowikowski communicated with her about the interviews and the decisions to select Ms. Pelletier, she fails to allege that the Superintendent or Ms. Ward-Downer participated in the interviews or had any other role in the process. There is simply no connection between the School Department itself and the complained-of actions. Accordingly, Plaintiff has failed to state a claim for First Amendment retaliation. *See Gagliardi v. Sullivan*, 513 F.3d 301, 307 (1st Cir. 2008) (affirming dismissal of First Amendment retaliation claim where allegation that mayor caused constitutional injury was "conclusory and . . . not substantiated by reasonable inference from the well-pleaded facts" and, therefore, there was no basis for municipal liability); *see also Sullivan v. City of Springfield*, 561 F.3d 7, 16 (1st Cir. 2009) (holding "plaintiffs' speculation that there may be a causal chain, without supporting evidence, . . . insufficient" to survive summary judgment).

           **b.**    *Equal Protection*

To state a claim for violation of her rights under the Equal Protection Clause, a plaintiff must allege that she "was treated differently than others similarly situated" and that "such difference was based on an impermissible consideration, such as race." *Ayala-Sepúlveda v.*

19

*Municipality of San Germán*, 671 F.3d 24, 32 (1st Cir. 2012). An allegation "of actual disparate treatment is a 'threshold requirement' of a valid equal protection claim." *Id.* (quoting *Est. of Bennett v. Wainwright*, 548 F.3d 155, 167 (1st Cir. 2008)). "Additionally, when § 1983 is used as a parallel remedy to a statutory discrimination claim, 'the prima facie elements to establish liability are the same under both statutes.'" *King v. Me. Dep't of Corr.*, No. 1:13-CV-00163-JDL, 2015 WL 2092526, at *3 (D. Me. May 5, 2015) (quoting *Rivera v. P.R. Aqueduct & Sewers Auth.*, 331 F.3d 183, 192 (1st Cir. 2003).

Plaintiff fails to allege facts that establish the threshold requirement that she "was treated differently than others similarly situated." *Ayala-Sepúlveda*, 671 F.3d at 32. Plaintiff's failure to identify any comparators with whom she was "similarly situated" who were treated more favorably than she was by the School Department, alone warrants dismissal of Plaintiff's Equal Protection claims. *See Alston*, 988 at 575 (holding that plaintiff's failure to identify any "similarly situated" individuals, "in and of itself, suffice[d] to validate the dismissal" of plaintiff's Equal Protection claim). Additionally, because Plaintiff has failed to plausibly plead a violation of Title VII and the MHRA, her parallel Equal Protection claim also fails. *See King*, 2015 WL 2092526, at *3.

## CONCLUSION

For the foregoing reasons, Defendant Brewer School Department respectfully requests that the Court dismiss all claims raised against it in Plaintiff's Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated: April 15, 2022         */s/ Melissa A. Hewey*
                              Melissa A. Hewey
                              *Counsel for Defendant*
                              *Brewer School Department*

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
(207) 772-1941
mhewey@dwmlaw.com