UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| MICHELLE MACDONALD, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>BREWER SCHOOL DEPARTMENT, et )<br>al., )<br>)<br>    Defendants. ) | Civil Action No. 1:22-cv-00024-NT |

**REPLY IN SUPPORT OF DEFENDANT BREWER SCHOOL DEPARTMENT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendant Brewer School Department ("School Department") hereby submits this reply to Plaintiff's Objection (ECF No. 12) to its Motion to Dismiss (ECF No. 8).

**ARGUMENT**

**I.  Allegations Occurring Before January 3, 2019 Are Untimely**

In her Objection, Plaintiff attempts to save her allegations of conduct occurring before January 3, 2019 on two fronts, neither of which have merit. First, she tries to move the lookback period from January 3, 2019 (300 days after she filed her complaint with the Maine Human Rights Commission) to December 13, 2018 (300 days after she filed an intake questionnaire with the Human Rights Commission). Filing an intake questionnaire, however, is not the same as filing a complaint, as the Maine Human Rights Commission itself recognizes. *See* Instructions, Human Rights Commission, State of Maine, https://www.maine.gov/mhrc/file/instructions (last accessed May 25, 2022) ("completing the Intake Questionnaire does not necessarily mean that a complaint of discrimination has been filed").[1]  Plaintiff's complaint was filed with the MHRC on

---

[1] The only authority Plaintiff provides for her argument that an intake questionnaire is a "complaint" is a citation to the 94-348 C.M.R. Ch. 2 § 2.02(F) (2014). That regulation, however, provides only that a complaint, once made, may be amended. It does not provide that an initial intake questionnaire is a complaint.

1

October 29, 2019, Compl. ¶ 29, so any allegations of conduct occurring more than 300 days before then are untimely.

Second, she argues that everything pled in the Complaint, including all of the allegations occurring back in 2018 are timely because they are part of a continuing violation. Under the continuing violation doctrine, the issue is "whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002). Here, Plaintiff has failed to plausibly plead such a practice. Plaintiff's allegations through December 2018 are that Ms. Pelletier was hostile and stopped responding to her emails following disagreements about when and how to include the GSA in the yearbook, that Mr. Wellman's comments offended her, that Ms. Ward-Downer was confused and uncomfortable in a discussion of LGBTQ+ issues, and that Mr. Slowikowski told her she was "too close to the issue" in regards to LGBTQ+ rights. Compl. ¶¶ 48-52, 55, 59-61, 63-70, 75, 78-81, 88. The post-December 2018 allegations are different: Plaintiff alleges that Mr. Wellman and Ms. Pelletier lodged a retaliatory internal complaint against her and she was in turn reprimanded for her behavior, despite a finding that she had not intentionally engaged in confrontational behavior, and that Ms. Pelletier, Ms. Ward-Downer and Mr. Slowikowski failed to have perfect email communication with her, teachers falsely accused her of turning them in. Compl. ¶¶ 103-112, 129-30, 137, 139-40, 141, 142, 145, 146, 152, 155. Plaintiff's claims, therefore, must be limited to acts allegedly occurring before January 3, 2019.

## II.     Plaintiff's Discrimination Claims Should Be Dismissed

Plaintiff's discrimination claims against the School Department are based on two theories: (1) that she was subjected to a hostile environment based on sex; (2) that she suffered adverse employment action because of sex and/or for opposing discriminatory employment

2

practices. *See* Compl. Counts I and II. As set forth more fully in Brewer's initial memorandum and below, all of these claims should be dismissed for failure to state a claim.

    A.    Hostile Environment

As pled in the Complaint and further explained in Plaintiff's Opposition, Plaintiff's hostile environment claim is based on the allegation that she was subjected to a hostile work environment because of her association with her transgender child and/or because of her advocacy for LGBTQ+ students at Brewer High School.

First, even assuming Plaintiff has pled sufficient facts to support an associational discrimination claim, which, as set forth in the School Department's initial memorandum, she has not, this claim should be dismissed because, beyond her conclusory statements in paragraphs 150 and 158 of the Complaint, Plaintiff has failed to plead that the allegedly hostile environment was *because of* her protected status, i.e. her association with her child and/or LGBTQ+ students. What Plaintiff has pled, as identified in her Opposition, is that she has a transgender child and has advocated for LGBTQ+ students; that people have said things she finds offensive; and that people have been unkind to her. *See* Plaintiff's Opposition at 8. What she has not pled are facts that would support an inference that any of this conduct – even if actionable as harassment – was because she has a transgender child or because she has advocated for LGBTQ+ students.

Plaintiff's Opposition makes it clear is that the real reason she considers her work environment to be harassing is because she found viewpoints expressed to her by different people over a two year period to be insensitive to LGBTQ+ individuals. Thus, the "extensive examples of offensive comments" she identifies in her Opposition are as follows: Compl. ¶ 48 (some teachers in the school used deadnames and former pronouns of transgender students); ¶¶ 50 - 52 (Towle stated that younger children might change their mind and appeared uncomfortable when Plaintiff referred to her transgender child); ¶ 55 (Pelletier said the GSA was

3

a support group); ¶¶ 59-61 (a colleague said Plaintiff was influencing students with her beliefs); ¶ 75 (Wellman asked to send students to a presentation to analyze the speaker's rhetoric); ¶¶ 95-96 (examples of students saying derogatory things about transgender students); ¶ 134 (student tried to engage Plaintiff in debate about discrimination of heterosexual men). Not one of these allegations pertains to Plaintiff's association with her child or LGBTQ+ students. Indeed, with the single exception of the accusation that she was imposing her views on students, none of these allegations have anything whatsoever to do with Plaintiff. The same is true virtually all of the other paragraphs of the Complaint she cites to in support of her argument that the environment was hostile.

Second, Plaintiff has failed to plead actionable harassment that is severe and pervasive. Plaintiff is correct that there is no precise test for determining when conduct rises to the level of actionable harassment, but as the First Circuit has cautioned, this is "[s]ubject to some policing at the outer bounds," by the court. *Marrero v. Goya of Puerto Rico, Inc.,* 304 F.3d 7, 19(1st Cir. 2002) quoting *Gorski v. N.H. Dep't of Corrections,* 290 F.3d 466, 474 (1st Cir.2002).

Here, the conduct Plaintiff alleges has crossed those outer bounds as is demonstrated by comparing the allegedly harassing conduct Plaintiff identifies in her opposition with conduct in cases involving actual workplace harassment. For example, compare the "verbal attacks" identified by Plaintiff at Compl. ¶¶ 57, 102[2] with the often vulgar and crude derogatory name calling found actionable in *Marrero*, 304 F.3d at 20 (yelling at Plaintiff in front of coworkers) and *Rosario v. Dep't of Army*, 607 F.3d 241, 247 (1st Cir. 2010) (referring to "humiliating, offensive comments" as verbal attacks); the "work sabotage" identified by Plaintiff at Compl. ¶¶ 57, 139-40, 142 with things physical destruction of work product, tampering with work samples

---

[2] It is not clear whether the student's alleged rude and disrespectful outburst even occurred on school grounds. Regardless, the implications of considering teenager's outbursts as constituting a hostile work environment would be immeasurable.

4

or creating physical barriers to ability to perform in *Betancourt-Esquerdo v. Union Internacional United Auto Workers* CITE (D.P.R. Aug. 17, 2006) (tampering with work samples); *Olivieri v. Abbot Lab'ys* CITE (D.P.R. Mar. 19, 2008) (putting a buggy on a crate and blocking other buggies); the "ostracization" identified by Plaintiff in Compl. ¶¶ 57, 137 with the outright exclusion in *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 559 (6th Cir. 1999) (single employee not porvided a key to the office and was the only person to be denied a break). In short, Plaintiff's allegations of harassment simply do not pass a "threshold of severity". *See Flood v. Bank of Am. Corp.*, 780 F.3d 1, 12 (1st Cir. 2015).

Third, Plaintiff has not alleged that any of the conduct unreasonably interfered with her work performance. *See Ayala-Sepulveda v. Municipality of San German*, 671 F.3d 24, 31 (rejecting hostile work environment claim because no evidence that work performance suffered); *Kosereis v. Rhode Island*, 331 F.3d 207, 216-17 (1st Cir. 2003). Plaintiff remains employed with the School Department and her conclusory statements of adverse effect on her employment are insufficient to plausibly state a claim for hostile environment harassment. *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir 2021).

B. Adverse Action

Plaintiff also includes claims against the School Department for direct discrimination based on her allegation that her supervisors, Towle, Palmer, Slowikowski and Ward-Downer, alleged took adverse action against her because of her association with her child/and or advocacy for LGBTQ+ student and/or her the discrimination complaints she made internally and to the MHRC. With regard to liability for the alleged adverse employment actions, Plaintiff fails to mention in her Opposition that she was appointed Curriculum Leader in 2018-2019, following GSA yearbook meetings, Ms. Pelletier's hostility and Mr. Wellman's offensive comments, and her own April 2018 hostile work environment complaint. Compl. ¶¶ 124, 149, 151. Based on those facts, and in

the absence of other specific allegations upon which discriminatory intent could be inferred, the decision more than a year later, and immediately following a complaint filed against Plaintiff (which is itself protected conduct) cannot support a claim for discrimination against the School Department.

With respect to the alleged reprimand, Plaintiff nowhere alleges that it did or could conceivably have "materially changed conditions of plaintiff's employ." *Burns v. Johnson*, 829 F.3d 1 (1st Cir. 2016). Indeed, *King v. Bangor Fed. Credit Union*, 611 A.2d 80, 82 (Me. 1992), the case Plaintiff relies upon to support her contention that the reprimand constitutes adverse action, proves the point. There the employee suffered tangible economic loss by being assessed a fine, whereas here, the vice principal told Plaintiff that while she did not realize she was coming off as rude, her coworkers perceived her that way. Compl. ¶¶ 129-30. Such a statement does not amount to adverse action.

### III.  The Section 1983 Claims (Counts IV-XV) Should Be Dismissed.

Plaintiff's section 1983 claims must fail because she has not alleged, or argued, the existence of a policy or custom for which the School Department can be held liable. Plaintiff seems to be arguing that because she has named the Individual Defendants in their official capacities, this allows her to pursue an institutional claim without meeting the *Monell* standard. That is not the case.

The difference between individual capacity suit and official capacity suits was explained by the United States Supreme Court in *Kentucky v. Graham,* 473 U.S. 159, 166 (1985):

> On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. See, *e.g., Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a " 'moving force' " behind the deprivation, *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981) (quoting *Monell, supra,* 436 U.S., at 694, 98 S.Ct., at 2037); thus, in

6

an official-capacity suit the entity's "policy or custom" must have played a part in the violation of federal law. *Monell, supra; Oklahoma City v. Tuttle,* 471 U.S. 808, 817–818, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985); *id.,* at 827–828, 105 S.Ct., at 2437, 2438 (BRENNAN, J., concurring in judgment)

In her Opposition, Plaintiff argues that the individuals were the "moving force" but does not identify a policy or custom that caused her injury. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 416–17 (1997); *Monell v. Dep't of Soc. Serv. Of City of N.Y.*, 436 U.S. 658, 694 (1978); *see also Haley v. City of Bos.*, 657 F.3d 39, 51 (1st Cir. 2011).   Here Section 983 claims against the School Department must therefore be dismissed.

## CONCLUSION

For the reasons stated above and in its Motion to Dismiss (ECF No. 8), Defendant Brewer School Department respectfully requests that the Court grant its motion and dismiss all claims raised against it in Plaintiff's  Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.


Dated:  June 3, 2022                                         */s/ Melissa A. Hewey*
                                                             Melissa A. Hewey
                                                             *Counsel for Defendant*
                                                             *Brewer School Department*

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
(207) 772-1941
mhewey@dwmlaw.com