UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| MICHELLE MACDONALD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:22-cv-00024-NT |
| | ) |
| BREWER SCHOOL DEPARTMENT, et al., | ) |
| | ) |
| Defendants. | ) |

**REPLY IN SUPPORT OF INDIVIDUAL DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Gregg Palmer, Cheri Towle, Brent Slowikowski, Renita Ward-Downer, Paul Wellman, and Breanne Pelletier (collectively, the "Individual Defendants") hereby respond to new matters raised in Plaintiff's Opposition to their motion to dismiss.

**DISCUSSION**

**I.     There is No Individual Liability Under the MHRA**

In an effort to save her MHRA claim against Breanne Pelletier, Plaintiff begins her opposition to the Individual Defendants' motion to dismiss by attempting to distinguish the Maine Law Court's decision in *Furhmann v. Staples Office Superstore East, Inc.,* 2012 ME 135, 58 A.3d 1083. Thus, she argues that notwithstanding the unambiguous holding by Maine's highest court that there is no individual liability for employment discrimination under the MHRA, this Court should allow her claim against Ms. Pelletier to survive because 5 M.R.S. § 4633(1) makes it unlawful for a "person" rather than an "employer" to discriminate against an individual for opposing an action that is unlawful under the Act. The Maine Law Court has not

1

yet had the occasion to specifically construe Section 4633 which is something that this Court has found significant in refusing to find that there is individual liability in a prior case:

> In the absence of any state authority for her self-proclaimed position, it is noteworthy that the First Circuit has cautioned litigants who choose to come to federal rather than state court that they "cannot expect that new trails will be blazed." *Hearts With Haiti, Inc. v. Kendrick*, No. 2:13-cv-00039-JAW, 2015 WL 3649592, at * 3 (D. Me. June 9, 2015) (quoting *Ryan v. Royal Ins. Co. of Am.*, 916 F.2d 731, 744 (1st Cir. 1990)). In the face of such novel questions of state law, "litigants must provide a federal court with a 'well-plotted roadmap showing an avenue of relief that the state's highest court would likely follow.' " *Id.* (quoting *Ryan*, 916 F.2d at 744). No such roadmap has been provided here. Indeed, if the MWPA retaliation provisions were interpreted as Ms. Worthy urges, the exception to Maine Supreme Judicial Court's holding in *Fuhrmann* would become the rule since an aiding and abetting allegation would necessarily survive a motion to dismiss and might even survive a motion for summary judgment, causing non-employers to fall within the MWPA in a manner contrary to *Fuhrmann*. The Court declines to create an exception to the *Fuhrmann* rule based on the aiding and abetting provision of the MWPA.

*United States ex rel. Worthy v. E. Maine Healthcare Sys.,* No. 2:14-CV-00184-JAW, 2017 WL 211609, at *33 (D. Me. Jan. 18, 2017).

Although the Maine Law Court has yet to address the issue specifically with regard to Section 4366, lower courts in Maine have, and in doing so, have rejected the arguments Plaintiff makes here.  Most recently in *Furrow v. Hannaford Bros. Co., LLC,* Pen-CV-22-0008 (May 16, 2022)[1]  the Penobscot County Superior Court granted a motion to dismiss a discrimination claim pled against an individual, holding that the same argument Plaintiff raises here was "not persuasive." *Id. 8.*   The court started its analysis by stating that Section 4572 – the section of the MHRA specifically addressed by the Law Court in *Furhmann* – and Section 4633 are part of a single statutory scheme that should be read in harmony and noting that "it would not be logical to prohibit supervisor liability for violation of § 4572, yet permit supervisory liability for violation of § 4633." *Id.* at 9; *see also Charette v. St. John Valley Soil & Water Conservation*

---

[1] A copy of the decision, which is not yet available on line, is attached hereto.

2

*Dist.,* No. 1:17-CV-35-GZS, 2017 WL 2683951, at *12 (D. Me. June 20, 2017) ("The [Law Court] stated that its conclusion was not changed by the use of the phrase "any person" within the definition of "employer" and in other provisions of the MHRA."). It went on to observe that the Law Court has consistently been guided by the federal court's interpretation of Title VII in construing the MHRA and under Title VII cases in the First Circuit and elsewhere have held that there is no individual liability for employment discrimination under the federal law. *Id.* Finally, it cited to the other state and federal court decisions that have held that there is no personal liability under Section 4633. *Id.* at 10-11.

In her opposition, Plaintiff does not acknowledge that the courts that have considered this issue have rejected her argument. Rather, the "authority" she presents to support her position is a 2013 guidance issued by the Maine Human Rights Commission. The persuasiveness of that guidance, however, has already been considered and rejected by this Court. *Huard v. Kennebec Cnty.*, No. 1:16-CV-00473-GZS, 2019 WL 1264864, at *2 (D. Me. Mar. 19, 2019) ("While Plaintiff has cited a 2013 guidance memorandum from the Maine Human Rights Commission as offering support for individual liability after *Fuhrmann*, the Court does not believe this memo can override the clear case law that supports judgment as a matter of law in favor of the individual Defendants named in this case."); *Charette v. St. John Valley Soil & Water Conservation Dist.,* No. 1:17-CV-35-GZS, 2017 WL 2683951, at *12 (D. Me. June 20, 2017).

In short, the argument Plaintiff makes with regard to the individual liability under the Maine Human Rights Act is one that has been rejected repeatedly by the courts in Maine (in both the state and federal system) that have considered it. This Court should reject it as well.

**II.      Plaintiff Has Failed to Plausibly Plead Her Equal Protection and First Amendment Claims Against Any of the Individual Defendants**

As this Court recently held in *Wadsworth v. Maine Sch. Admin. Dist. 40/Reg'l Sch. Unit 40*, No. 2:19-CV-00577-JAW, 2020 WL 5880471, at \*17 (D. Me. Oct. 2, 2020):

> "To state an equal protection claim, the plaintiff must 'show that the parties with whom he seeks to be compared have engaged in the same activity vis-à-vis the government entity without such distinguishing or mitigating circumstances as would render the comparison inutile.' " *Raymond [v. Me. Sch. Admin. Dist. 6, No. 2:18-cv-00379-JAW, 2019 WL 2110498 (D. Me. May 14, 2019)]*, 2019 WL 2110498, at \*8 (quoting *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007)). "[A] plaintiff needs to allege facts showing that '(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Davis v. Coakley*, 802 F.3d 128, 132-33 (1st Cir. 2015) (quoting *Rubinovitz v. Rogato*, 60 F.3d 906, 910 (1st Cir. 1995)). The plaintiff must "identify and relate *specific instances*" of the defendant treating similarly situated persons differently, "instances which have the capacity to demonstrate that [plaintiffs] were singled ... out for unlawful oppression." *Buchanan v. Maine*, 469 F.3d 158, 178 (1st Cir. 2006) (alterations and emphasis in original) (quoting *Rubinovitz*, 60 F.3d at 910). The plaintiff must also show that the defendant acted with a discriminatory intent. *Lipsett*, 864 F.2d at 896.

The burden on Plaintiff to state a First Amendment claim against the Individual Defendants is similar: She must allege fact that plausibly establish (1) that she engaged in protected conduct; (2) that she suffered adverse action and (3) "that the protected conduct was a substantial or motivating factor in the adverse action." *Pollack v. Reg'l Sch. Unit 75*, 12 F. Supp. 3d 173, 188 (D. Me. 2014). Plaintiff has failed in her burden here.

First, with respect to the equal protection claim, although she argues that she plausibly pled that she was treated differently from others similarly situated, a review of the paragraphs of the Complaint she cites in support of this claim reveal that she has done no such thing. *See* Pl. Memo at 6, citing Complaint ¶ 25 ("Throughout the events giving rise to this complaint, Ms. Pelletier was employed by the Brewer School Department as an English Teacher at Brewer High School"); ¶ 111 (quoting from Ms. Pelletier's interview about her grievances against fellow employers ); ¶ 120 ("On June 26, 2019 Principal Slowikowski informed MacDonald that the

4

Curriculum Leader position for the next year would be given to Pelletier instead of MacDonald"), ¶ 149 ("the other candidate was Pelletier"). What these allegations demonstrate is nothing more than that Pelletier and Plaintiff were both teachers at the Brewer High School and that one year Pelletier was appointed as Curriculum Director and MacDonald (who had also held that position) was not.[2]

Second, Plaintiff entirely fails to identify in her Complaint *specific instances* of actionable conduct by specific Individual Defendants. With respect to Defendants Pelletier and Wellman, the *sine qua non* of a Section 1983 claim is the allegation that the defendant was acting under color of law when engaged in the conduct complained of. 42 U.S.C. § 1983; *see also* Although Plaintiff alleges that Pelletier and Wellman harassed her, they had no supervisory authority over her and there is nothing in the Complaint plausibly pleading that they were acting under color of law. The equal protection claim against the Wellman and Pelletier should therefore be dismissed. *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995) (Coworker's "singularly personal frolic" of hazing plaintiff not state action because "[i]n general, section 1983 is not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved in that way but for the authority of his office.") *See also*,
*Hughes v. Halifax County School Board,* 855 F.2d 183, 184, 186–87 (4th Cir. 1988) (co-workers' taunts and a mock hanging of the plaintiff held not state action), *cert. denied,* 488 U.S. 1042, 109 S.Ct. 867, 102 L.Ed.2d 991 (1989); *Ottman v. City of Independence,* 341 F.3d 751,

---

[2] Plaintiff also cites to ¶¶ 165 and 166 of her Amended Complaint where she attempts to cure the defects in her pleading with two broad "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" neither of which are sufficient to meet her burden on a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

761–62 (8th Cir. 2003) (alleged sexual harassment by nonsupervisory co-worker held not state action); *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir. 1992) ("Typically, liability under the Equal Protection Clause for sexual harassment in the workplace is predicated upon some authority that the wrongdoer has over the victim. Otherwise, it is difficult to establish that the abusive action was perpetrated 'under color of state law' rather than as an essentially private act of sexual harassment. The mere fact that all the participants were state employees or that the offending acts occurred during working hours is not enough").

With respect to Defendants Palmer, Towle, Slowikowski and Ward-Downer, as set forth in the Complaint and her Opposition, Plaintiff's argument appears to be based on the theory that these individuals allegedly failed to protect her from harassment by her colleagues.  In order to plead an equal protection claim for failure to protect, Plaintiff must plausibly plead that the defendants against whom the claim was made had some degree of control over the wrongdoer, and that they were either involved in, or a prime mover behind, the underlying violation. *Camilo-Robles v. Zapata*, 175 F.3d 41, 43–44 (1st Cir. 1999).  Here, other than the conclusory allegations that the various Individual Defendants have violated Plaintiff's right to equal protection, Plaintiff has failed to plead facts to support this claim.  Palmer, Towle, Slowikowski and Ward-Downer are entitled to dismissal of the equal protection claims.

Plaintiff's arguments in support of her First Amendment claim suffer from the same infirmities as her arguments in support of the equal protection claim, namely that she relies on broad generalities and fails to support her argument with citation to specific facts about specific individuals.

Although Plaintiff claims that her motive in engaging in the speech that forms the basis of her First Amendment claims was personal, she points to no case law – and there is none – that

establishes that the speaker's motive is the determinative factor in whether speech is within the scope of job duties or not. The fact is that every single instance where Plaintiff alleges that her First Amendment rights were violated involved either her advocacy for the rights of LGBTQ+ students at school or her own utilization of the school complaint process and thus the speech at issue was unquestionably made in the course of her employment and not subject to protection.

Here First Amendment claims against Pelletier and Wellman fail for the additional reason that, as explained above, she has pled no facts that could support a contention that they were cting under color of state law when they engaged in the conduct she complains of.

### III.     The Individual Defendants Are Entitled To Qualified Immunity

In the context of qualified immunity, "'[c]learly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby,* 138 S. Ct. 577, 589 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011). Further, the rule "must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* at 589-90 (citations and internal quotation marks omitted). A rule that is "suggested by then-existing precedent" is not "clearly established;" "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* Finally, an individual governmental official is entitled to immunity unless "an objectively reasonable official in the defendant's position would have known that his conduct violated that rule of law." *Alfano v. Lunch,* 847 F.3d 71, 75 (1st Cir. 2017)

Here, although, as Plaintiff points out, it may have been clearly established that the equal protection clause prohibits sexual harassment and the First Amendments protects complaints about harassment, there is simply no clear principal of law that holds that individual English

teachers may be violating a colleague's constitutional rights when they are unkind to that colleague, or school administrators may be liable under Section 1983 when they do not do enough to address alleged harassment. Apart from the broad statements concerning the unsurprising proposition that federal law prohibits protected class harassment and protects people from speaking out about it, Plaintiff provides no case law that would indicate that the Individual Defendants should have known that engaging in the conduct alleged in this Complaint would hold them out to liability under Section 1983. It simply makes no sense that school teacher would know that it was unlawful to call a co-worker a drama queen, stop responding to her email or even be rude and hostile to her (Complaint ¶75), say that training run by a co-worker the previous year was awful (Complaint ¶ 100), express that the group advised by a colleague was like a religion (Complaint ¶ 59), or engage in any of the other minor workplace unpleasantnesses alleged in the Complaint. The Individual Defendants are therefore entitled to qualified immunity on Plaintiff's Section 1983 claims.

## CONCLUSION

For all of the foregoing reasons, as well as the reasons set forth in the Individual Defendants' initial brief, this Court should enter an order dismiss Plaintiff's claims against them.

Dated: June 3, 2022                /s/ Melissa A. Hewey
                                   Melissa A. Hewey
                                   *Counsel for Defendants*
                                   *Gregg Palmer, Cheri Towle, Brent Slowikowski, Renita Ward-Downer, Paul Wellman, and Breanne Pelletier*

DRUMMOND WOODSUM
84 Marginal Way, Suite 600
Portland, Maine 04101-2480
(207) 772-1941
mhewey@dwmlaw.com