UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MICHELLE MACDONALD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BREWER SCHOOL DEPARTMENT et al. )<br>)<br>Defendants. ) | Case No. 1:22-cv-24-NT |

**STATEMENT OF INTEREST**
**OF THE UNITED STATES OF AMERICA**

The United States has a strong interest in eradicating employment discrimination, which includes ensuring the correct interpretation and application of Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. § 2000e *et seq*, with respect to claims alleging discrimination because of an individual's sex. The Attorney General of the United States is charged with enforcing Title VII where, as here, the employer is a state or local "government, governmental agency, or political subdivision." 42 U.S.C. § 2000e-5(f)(1). The President has declared that all persons "should be able to earn a living and pursue a vocation knowing that they will not be fired, demoted, or mistreated because of whom they go home to," and "fully enforc[ing] Title VII" is essential to achieving that goal. Exec. Order No. 13988, § 1, 86 Fed. Reg. 7,023 (Jan. 20, 2021). Accordingly, the United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517.[1]

---

[1] "The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States." 28 U.S.C. § 517.

1

**STATEMENT OF THE CASE**

According to her Complaint, Plaintiff Michelle MacDonald has been an English teacher at Brewer High School since 2007, co-advisor for Brewer High School's Gender and Sexuality Alliance ("GSA"), and a well-known advocate for LGBTQ+[2] students; she is also the mother of a transgender son.  ECF No. 1 at ¶¶ 41, 43, 44, and 70.[3]

MacDonald sued the Brewer School Department ("BSD").  In Count II of her Complaint, MacDonald asserts claims of sex discrimination, including sexual orientation and gender identity, and retaliation under Title VII.  In relation to her sex discrimination claims, MacDonald alleges, among other things, that BSD discriminated against her because of her advocacy for LGBTQ+ individuals.  ECF No. 1 at ¶¶ 103, 121, 150, 158 and 175.  Specifically, MacDonald alleges that because of her advocacy, she was subjected to a hostile work environment and an adverse action when BSD denied her a Curriculum Leader position at Brewer High School.  *Id.* at ¶¶ 147-51, 173.

In response, BSD filed a Motion to Dismiss.  *See* ECF No. 8.  It argues that some of MacDonald's Title VII claims are not cognizable, either because the First Circuit has not recognized advocacy claims or because MacDonald did not allege discrimination based on her own protected characteristics.  *See id.* at 8-10.  The United States respectfully submits this

---

[2] MacDonald's Complaint and Objection to BSD's Motion to Dismiss uses the term "LGBTQ+" and that is why the United States has used that term in this brief.  *See* Pl.'s Obj. Def. BSD's Mot. Dismiss, ECF No. 12 at 3 n.4 (explaining that that LGBTQ+ is an "acronym for 'lesbian, gay, bisexual, transgender and queer' with a '+' sign to recognize the limitless sexual orientations and gender identities used by members of our community" (citing Human Rights Campaign, Glossary of Terms, https://www.hrc.org/resources/glossary-of-terms)).

[3] Given the litigation's current procedural posture, the United States assumes that all well-pleaded facts in MacDonald's Complaint are true.  *See Cruz-Arce v. Mgmt. Admin. Servs. Corp.*, 19 F.4th 538, 543 (1st Cir. 2021) (explaining that all reasonable inferences must be drawn in favor of the plaintiff at the motion to dismiss stage).

Statement of Interest to provide an overview of advocacy discrimination claims under Title VII and to address whether MacDonald has sufficiently alleged discrimination based on advocacy on behalf of a protected class.[4]

## DISCUSSION

When employers discriminate against their workers for advocating for members of a protected class, they violate Title VII. This court should join the Sixth Circuit and other district courts across the country that have recognized that advocacy discrimination claims are cognizable.

The plaintiff in any Title VII case must show, as part of her prima facie case, membership in a protected class. *Joyce v. Postmaster Gen., U.S. Postal Serv.*, 846 F. Supp. 2d 268, 290 (D. Me. 2012) (prima facie case for discrete action of non-selection); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (same); and *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 395 (1st Cir. 2002) (prima facie case for hostile work environment claim). When a plaintiff asserts a claim of advocacy discrimination, she satisfies this element by alleging advocacy on behalf of a protected group. MacDonald meets that standard here and has sufficiently alleged that her advocacy motivated the harassment and adverse actions taken against her.

**I. This Court should follow the reasoning of the Sixth Circuit and other district courts across the country on Title VII advocacy claims.**

Courts around the country have recognized that plaintiffs may assert Title VII employment discrimination claims based on their advocacy on behalf of individuals within a protected class. The leading cases recognizing advocacy discrimination claims under Title VII originate in the Sixth Circuit, which has consistently recognized such claims for decades.

---

[4] The United States takes no position on the additional issues raised in Defendants' motions to dismiss that are not addressed in this Statement of Interest.

3

*Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 575 (6th Cir. 2000).

In *Johnson*, the Sixth Circuit held that an employee stated a viable Title VII discrimination claim by alleging that he was discriminated against "because of his efforts to [e]nsure that the [defendant] complied with its affirmative action policies, and because of his advocacy on behalf of women and minorities." 215 F.3d at 572. The plaintiff in *Johnson* wrote memoranda and sent letters, as part of his university position, that questioned the legality of the university's decisions to hire non-minority candidates and its commitment to equal employment opportunities for racial minority applicants and women. *Id.* at 568-69, 580. The university subsequently terminated the plaintiff, allegedly because of this advocacy. *Id.* at 570. The Sixth Circuit held that Johnson could bring a Title VII claim for advocating on behalf of minorities and women. *Id.* at 575.

The court explained that Johnson's complaint adequately stated a claim under Title VII even though he did not allege that the university discriminated against him because of his own race, but rather, because of his advocacy for women and racial minorities. The fact that an employee "has not alleged discrimination because of *his* [protected class] is of no moment." *Id.* at 575. When an employee faces discrimination because of his advocacy for racial minorities, "the race of the minorities for which he was advocating would be 'imputed'" to the employee. *Id.*

*Johnson* relied on the Supreme Court's decision in *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229 (1969), to support this conclusion. In *Sullivan*, the Court held that 42 U.S.C. § 1982's prohibition against race discrimination protected a white landlord who advocated for the rights of his Black tenants. 396 U.S. 229, 237 (1969). Even though Section 1982 does not

protect "white citizens," the court imputed the race of the Black tenants to the landlord in *Sullivan* in order to effectuate "the broad and sweeping nature of the protection meant to be afforded by" § 1982. *Id.* at 237. Given the similar purposes behind Section 1982 and Title VII, the Sixth Circuit correctly applied the reasoning from *Sullivan* to Title VII.

Following the logic in *Johnson*, the Sixth Circuit later recognized that plaintiffs alleging a hostile work environment could state a claim cognizable under Title VII by alleging that they were harassed because of their advocacy for protected individuals. *Barrett*, 556 F.3d at 514. In *Barrett*, the court explained that the "key questions" with such claims are: (1) whether the employer discriminated against the employee; and (2) "whether the reason for the discrimination was [the employee's] advocacy." *Barrett,* 556 F.3d at 514. A plaintiff who asserts an advocacy claim establishes that she is in a protected class with evidence that she advocated on behalf of individuals in a Title VII protected class. *Id.* at 515.

In addition, several district courts outside the Sixth Circuit have adopted the reasoning of these cases to hold that it violates federal civil rights laws to take adverse action against employees because of their advocacy on behalf of protected individuals, *see, e.g.*, *Joseph v. Bd. of Regents of Univ. Sys. of Ga.*, No. 1:20-cv-502-TCB, 2020 WL 6494202, at *6 (N.D. Ga. May 8, 2020); *Morales v. NYS Dep't of Lab.*, 865 F. Supp. 2d 220, 243 (N.D.N.Y. 2012), *aff'd sub nom. Morales v. New York State Dep't of Lab., Div. of Emp. Servs.*, 530 F. App'x 13 (2nd Cir. 2013); *Estate of Olivia v. New Jersey*, 579 F. Supp. 2d 643, 667-68 (D.N.J. 2008) (relying on *Johnson* and *Sullivan* to recognize advocacy claims under § 1981); and *Lopez v. Constr. & Bldg. Material, Drivers, Helpers, and Inside Emp. Union*, No. 04-1028 ADM/AJB, 2006 WL 90092, at *11-13 (D. Minn. Jan. 13, 2006); (relying on *Johnson* to recognize advocacy claims under § 1981 and the Minnesota analog of Title VII).

For example, in *Morales*, the employer hired the plaintiff, in part, because it expected her to use her Spanish language skills to help it provide services to Spanish-speaking Limited English Proficiency ("LEP") customers. 865 F. Supp. 2d at 227. The plaintiff advocated to several managers that the employer's policies and procedures discriminated against LEP customers. *Id.* at 229. The employer then criticized and counseled the plaintiff for assisting LEP customers, counseled her for other alleged issues and incidents, and ultimately terminated her. *Id.* at 230-35. The plaintiff sued her former employer, bringing, among other claims, an advocacy claim under Title VII. *Id.* at 226, 228.

Relying on *Johnson* and *Barrett*, the *Morales* court concluded that the employee's "advocacy on behalf of a protected group alone is sufficient to formulate a Title VII claim." *Id.* at 243 (citing *Johnson*, 215 F.3d at 575; *Barrett*, 556 F.3d at 511-14). The court observed that the employee presented "substantial evidence that she advocated for persons of Hispanic racial or national identities." *Id.* As a result, the "evidence of her advocacy is sufficient" to establish her advocacy claim. *Id.* (citing *Holcomb v. Iona Coll.*, 521 F.3d 130, 139 (2nd Cir. 2008); *Barrett*, 556 F.3d at 511-14; *Johnson*, 215 F.3d at 575).[5]

Title VII is a broad remedial statute similar to § 1982 and, thus, the Sixth Circuit correctly applied the same reasoning from *Sullivan* to Title VII. Congress passed Title VII for the broad remedial purpose of improving "the economic and social conditions of minorities and women" who had suffered from a "pattern of restriction, exclusion, discrimination, segregation, and inferior treatment in the workplace." 29 C.F.R. § 1608.1(b). Indeed, the legislative history

---

[5] While the First Circuit has not yet directly addressed whether advocacy claims, like the one MacDonald brings here, may be brought under Title VII, there is a case currently pending before the First Circuit that involves a Title VII advocacy claim. *See Frith v. Whole Foods Mkt., Inc.*, 517 F. Supp. 3d 60 (D. Mass. 2021) *appeal docketed*, No. 21-1171 (1st Cir. Mar. 4, 2021).

of Title VII contains "extensive analyses of the higher unemployment rate, the lesser occupational status, and the consequent lower income levels of minorities and women." *Id.*

Given Title VII's broad remedial purpose of "eradicating discrimination," *Manhart*, 435 U.S. at 719 (quoting *Albemarle*, 422 U.S. at 421), advocacy claims are necessary in order to give full effect to the purpose and intent of the statute. As the Sixth Circuit recognized, when employers take actions against advocates they remove an "effective adversary" to their discrimination against protected individuals. *Johnson*, 215 F.3d at 576 (quoting *Sullivan*, 396 U.S. at 327). As the reasoning from the Supreme Court and Sixth Circuit makes clear, the same discriminatory animus that motivates discrimination against protected classes of people motivates the discrimination against advocates for those protected classes of people.

For these reasons, this Court should follow the reasoning of the Sixth Circuit and other district courts and reject BSD's assertion that advocacy cannot not give rise to a Title VII claim. *See* Def. BSD Mot. Dismiss, ECF No. 8 at 10.

II. **MacDonald has sufficiently pled that she suffered discrimination because of her advocacy.**

MacDonald's complaint sufficiently alleges that her advocacy on behalf of a protected class—LGBTQ+ students at Brewer High School—caused a hostile work environment and the loss of her Curriculum Leader position.

First, the LGBTQ+ students are members of a protected class. Title VII forbids discrimination "because of * * * sex." As the Supreme Court explained in *Bostock v. Clayton Cty., Georgia*, discriminating against someone because of their sexual orientation or gender identity is, by definition, sex discrimination since "it is impossible to discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." 140 S. Ct. 1731, 1741 (2020).

7

Second, like the employees in *Johnson* and *Morales*, MacDonald engaged in advocacy in connection with her job duties as both an English teacher and co-advisor for the GSA. *Johnson*, 215 F.3d at 568; *Morales*, 865 F. Supp. 2d at 227. Indeed, BSD concedes that MacDonald's advocacy fell within her job duties as a teacher. ECF No. 8 at 19. As a teacher, she advocated to Brewer High School Principal Brent Slowikowski on behalf of LGBTQ+ students in her classroom to prevent other students in her classes from making discriminatory statements about their LGBTQ+ classmates. ECF No. 1 at ¶¶ 95-99. As their teacher with a duty to ensure a classroom free from discrimination, she spoke up to protect the LGBTQ+ students in her classroom who would be affected by the offensive discriminatory conduct. *Id.* In her role as co-advisor to the GSA, she advocated to teachers and BSD administrators for treating GSA equally compared to other student groups, protecting the identity of GSA members, and increasing consequences for slurs against GSA members. *Id.* at ¶¶ 53-56; 71-72; 78-82. Here, too, BSD concedes that MacDonald's advocacy fell within her job duties as GSA's advisor. ECF No. 8 at 19.[6]

Accordingly, similar to the employee in *Johnson*, MacDonald explicitly expressed concerns that BSD teachers and students were discriminating against members of a protected class—here, LGBTQ+ students. *Johnson*, 215 F.3d at 567-68. As in *Johnson*, MacDonald questioned BSD's commitment to equal treatment based on sexual orientation and gender

---

[6] In response to BSD's motion to dismiss, MacDonald argues that this Court should not dismiss her First Amendment claims because she alleges that at least some of her advocacy occurred outside her job duties. ECF No. 12 at 17. Conversely, BSD argues that all of MacDonald's advocacy alleged in her Complaint occurred within the course of her job duties as a teacher and GSA advisor. ECF No. 8 at 19. The advocacy discussed in this brief plausibly relates to MacDonald's job duties when drawing all reasonable inferences in MacDonald's favor in connection with her Title VII claim. *See Cruz-Arce*, 19 F.4th at 543. But the United States takes no position on whether other advocacy, not discussed in this brief, falls within MacDonald's job duties when considering her First Amendment claims. ECF No. 1 at ¶¶ 48, 59-62, 63-69, 92-94.

identity. *Id.* at 568. And like the employee in *Johnson*, MacDonald alleges that she suffered discrimination of her own for this advocacy in the form of a hostile work environment and not being selected for a Curriculum Leader position. *Id.* at 570.

What is more, MacDonald, advocated to her supervisors, including Principal Slowikowski and other BSD administrators, against the discrimination LGBTQ+ students faced from BSD teachers and students. *See Morales*, 865 F. Supp. 2d at 229. The nature of the advocacy was also similar to what the *Morales* court recognized is protected advocacy. The employee in *Morales* advocated that the employer's policies and procedures discriminated against LEP customers. 865 F. Supp. 2d at 229. Here, MacDonald advocated to change BSD's policies so that discrimination against LGBTQ+ students would be prohibited. ECF No. 1 at ¶¶ 53-56; 71-72. And like the employee in *Morales*, she faced discrimination as a result of her advocacy. *Morales*, 865 F. Supp. 2d at 230-35. MacDonald thus sufficiently establishes the protected class element of her prima facie case. In fact, some of MacDonald's advocacy was not only on behalf of a protected group, but it related directly to the terms and conditions of her roles as both an English teacher and GSA advisor, which required her to participate in BSD's discriminatory practices or advocate against them.

MacDonald's advocacy is much more directly tied to the existence of a protected class than the advocacy alleged in *Frith*. In *Frith*, the plaintiffs brought an advocacy claim based on wearing masks and other attire that said "Black Lives Matter," which they had asserted was "advoca[cy] for . . . all Black Whole Foods employees." 517 F. Supp. 3d at 64, 72. The court rejected that argument. *Id.* at 72. It highlighted that the employees had not alleged that the defendants specifically were mistreating Black people "on whose behalf Plaintiffs were allegedly advocating" because they were Black. *Id.* Nor did they allege any other "concrete allegation of

9

discrimination." *Id.* at 73.  But here, MacDonald alleges that she advocated against discrimination by specific individuals: certain students in her classroom, ECF No. 1 at ¶¶ 78-82, 95-99; and other teachers, *id.* at ¶¶ 53-56.  The discrimination she was advocating against was also concrete: discriminatory statements in her classroom, *id.* at ¶¶ 95-99; unequal treatment of GSA, *id.* at ¶¶ 53-56; and slurs against LGBTQ+ students, *id.* at ¶¶ 71-72.  MacDonald's advocacy, moreover, arose directly under the terms and conditions of her roles as both an English teacher and GSA advisor.  The advocacy she alleges is thus more similar to the advocacy in *Johnson* and *Morales* than in *Frith*.

Third, MacDonald has sufficiently alleged that she suffered harassment and that BSD denied her a Curriculum Leader position because of her advocacy for LGBTQ+ students.  According to MacDonald's Complaint, one of her harassers, Wellman, admitted that his problems with MacDonald stemmed from her advocacy for LGBTQ+ students.  ECF No. 1 at ¶¶ 110-11.  MacDonald also alleges facts which indicate that another one of her harassers, Pelletier, harassed MacDonald because she resented MacDonald's advocacy for GSA's inclusion in the yearbook.  *Id.* at ¶¶ 53-57, 73, and 78-89.  Thus, the Complaint sufficiently alleges that Wellman and Pelletier harbored animus against MacDonald because of her advocacy and that animus motivated their harassment.  These allegations are more than sufficient to state a claim for a hostile work environment.

On the denial of the Curriculum Leader position, MacDonald alleges that BSD hired Pelletier for the Curriculum Leader position for the 2020-21 school year instead of her even though MacDonald had held the position during the eight previous years.  ECF No. 1 at ¶¶ 114 and 147-50.  According to the Complaint, BSD told MacDonald that it chose Pelletier for the position because it thought she was "better able to communicate with colleagues about student

10

needs" than MacDonald. But MacDonald alleges that rationale cannot support BSD's decision because Pelletier had received a poor performance evaluation due to "communication issues" with colleagues. *Id.* at ¶¶ 122-23. Furthermore, it was not until after MacDonald faced resistance to her advocacy on behalf of LGBTQ+ students that anyone questioned whether she should continue to serve as Curriculum Leader. *Id.* at ¶¶ 114-16. Indeed, before she faced this resistance, she had never even had to interview for the Curriculum Leader position. *Id.* These facts are more than required for purposes of the pending motion to demonstrate the first prong of the prima facie case, and explain the link between her advocacy and the discriminatory actions taken against her. *See Corson v. Modula, Inc.*, No. 2:20-CV-104-DBH, 2020 WL 4194498, at *5 (D. Me. July 21, 2020) (*relying on Garayalde-Rijos v. Municipality of Carolina*, 744 F.3d 15, 24 (1st Cir. 2014) (explaining that to survive a motion to dismiss, a plaintiff only needs to allege enough facts to show a plausible entitlement to relief and does not have to allege all the elements of a prima facie case).

For these reasons, MacDonald has sufficiently alleged that she was in a protected class for purposes of her advocacy claim and that she suffered harassment and denial of a Curriculum Leader position because of her advocacy.

## **CONCLUSION**

For the reasons set forth above, this Court should hold that Title VII forbids discriminating against an employee because that employee has advocated for members of a protected class and that MacDonald's complaint states a cause of action for advocacy discrimination.

Respectfully submitted,

Date: June 17, 2022

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

KAREN D. WOODARD (MD Bar, no number issued)
Chief
Employment Litigation Section
Civil Rights Division

MEREDITH L. BURRELL (MD Bar, no number issued)
Deputy Chief
Employment Litigation Section
Civil Rights Division

LORI B. KISCH (DC Bar No. 491282)
Special Litigation Counsel
Employment Litigation Section
Civil Rights Division

*/s/ Allan K. Townsend*
ALLAN K. TOWNSEND (ME Bar No. 9347)
EJAZ H. BALUCH, JR. (MD Bar No. 1612130032)
Trial Attorneys
Civil Rights Division
Employment Ligation Section
U.S. Department of Justice
4 Constitution Square
150 M Street, NE
Washington, DC  20530
Phone: (202) 353-5343
Fax:  (202) 514-1005
Allan.Townsend2@usdoj.gov
Ejaz.Baluch@usdoj.gov

12

CERTIFICATE OF SERVICE

      I hereby certify that on the date below I filed the foregoing document using the Court's electronic filing system which will send notification of such filing to all counsel of record.

Date: June 17, 2022                        */s/ Allan K. Townsend*